No. 03-068

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 317

IN RE THE ESTATES OF
SAMANTHA ANN ESTERBROOK,
ROXANNE D. SIMMONS and
RUSSELL W. SIMMONS, JR.,

Minor Children.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DG-01-90
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert Terrazas, Terrazas Law Offices, Missoula, Montana
(for Rocky King)

For Respondents:

Paulette C. Ferguson, Attorney at Law, Missoula, Montana
(for Russell E. Simmons and Sandra L. Simmons)

Submitted on Briefs:  June 19, 2003

Decided:  November 24, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Rocky King appeals from an order of the Fourth Judicial District Court, Missoula County, (1) including the grandparents as parties to future matters involving the conservatorship of her children; (2) requiring grandparental consent to stipulations for disbursement of settlement monies her children received from Montana Rail Link, Inc. (Rail Link) and the Burlington Northern Santa Fe Railway Company (BNSF); and (3) failing to direct the conservator to establish special needs trusts.  We affirm in part, reverse in part, and remand.

FACTUAL AND PROCEDURAL BACKGROUND

¶2    Russell E. and Sandra L. Simmons brought this action in September of 2001, seeking court approval of settlements they had negotiated with Rail Link and BNSF for personal injuries and damages to their grandchildren, Roxanne D. Simmons (Roxanne) and Russell W. Simmons, Jr. (Russell), and their grandchildren's half-sister, Samantha Ann Esterbrook (Samantha), as a result of an April 11, 1996, train derailment and chlorine spill in Alberton, Montana.  The Simmonses' petitions for court approval of the settlements stated the Simmonses were the court-appointed guardians of the three children.  The Simmonses also sought appointment of a guardian ad litem to manage and protect the settlements.  The Simmonses' son–Roxanne's and Russell's father–consented to the petition and the proposed settlements.  King, the mother of all three children, did not oppose the settlement amounts but opposed the proposed plan for administering the trusts and asked to be substituted for the Simmonses as the petitioner.

¶3    The District Court held five hearings in this matter.  Before the fifth hearing, the Simmonses' guardianships of the children were dissolved in a separate proceeding not of

record in this case, and the children began residing with King. After that time, the District Court held its final hearing in this matter, in which it approved the settlements with Rail Link and BNSF. The court appointed attorney John Schulte as conservator of the children's monies and gave Schulte authority to choose the investment firms to hold those monies. The court provided that money may only be removed from the settlement accounts by court order. King appeals.

## STANDARD OF REVIEW

¶4 We review findings of fact to ascertain whether they are clearly erroneous and conclusions of law to determine whether they are correct. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, ¶ 22, 51 P.3d 486, ¶ 22.

## DISCUSSION

### ISSUE ONE

¶5 Did the District Court err by including the Simmonses as parties to future matters involving the conservatorship of King's children?

¶6 King contends the District Court erred in including the Simmonses as parties to future matters. She claims their interest terminated with the dissolution of their court-appointed guardianships of the children. We disagree.

¶7 "Interested person" is defined broadly at § 72-1-103(25), MCA, as an heir, devisee, child, spouse, creditor, beneficiary, or any other person having a property right or claim against a trust estate. A person who is furnishing or supplying any money for support or care of a person for whom a conservator has been appointed is a person interested in the welfare of the protected person. Section 72-5-413(4), MCA.

¶8 In this case, it is undisputed that the Simmonses were the children's guardians and caregivers for several years immediately preceding the conservatorship, without significant financial support from King or the children's fathers. Counsel indicated at the fifth hearing that the children continued to stay with the Simmonses on weekends after they went to live with King. It was the Simmonses who negotiated–and petitioned the District Court for approval of–the settlements with Rail Link and BNSF for the children.

¶9 The Simmonses arguably have claims against the trust estates for their care of the children. In addition, they contributed monies to which they were entitled from Rail Link and BNSF for their own injuries and damages from the train derailment and chlorine spill to the children's settlements. We hold the District Court did not err by including the Simmonses as parties to future matters regarding the conservatorship.

ISSUE TWO

¶10 Did the District Court err in requiring the Simmonses' consent for stipulations for disbursement of settlement monies Roxanne, Russell and Samantha received from Rail Link and BNSF?

¶11 King says the District Court erred in requiring the Simmonses' consent for disbursement of settlement monies Roxanne, Russell and Samantha received from Rail Link and BNSF. She claims the Simmonses' interest ended with the dissolution of their court-appointed guardianship of the children. This issue is simply a restatement of Issue One, phrased differently.

¶12 We held above that the Simmonses are proper parties to future conservatorship proceedings. Having done so, we also hold the District Court did not err in including the

4

Simmonses, along with their son and King, as parties to any stipulations for disbursal of settlement monies.

ISSUE THREE

¶13 Did the District Court err in failing to direct Schulte to establish special needs trusts?

¶14 King claims the District Court erred in ordering Schulte to deposit the settlement proceeds in interest-bearing accounts without specifying the terms of special needs trusts. It appears that the District Court concluded that since monies were provided to the children by Rail Link and BNSF in settlement of their personal injuries, such funds should be used for the payment of any necessary medical expenses rather than allow the children to have at least part of their needs met through their eligibility for Medicaid.

¶15 King failed to present any evidence at the hearings in the District Court concerning approval of the proposed settlements, or more specifically any evidence or clearly defined argument supporting the need or basis for establishing the special needs trusts. Normally, we will not hold a district court in error for a proceeding in which the parties acquiesced. *State v. LaDue*, 2001 MT 47, ¶ 23, 304 Mont. 288, ¶ 23, 20 P.3d 775, ¶ 23.

¶16 Correspondingly, King does not provide us much more on appeal. In her opening brief on appeal, King sets forth several definitional authorities regarding what a special needs trust is, including a statement that "[u]nder certain circumstances, a special needs trust *may* be established" for particular purposes. (Emphasis added). She does not, however, advance any authority under which it would be error not to establish such trusts in the present case. While she does cite to one case in her reply brief, it is well-established that we do not consider new matter raised for the first time in a reply brief. *See* Rule 23(c),

5

M.R.App.P.; *State v. Sattler*, 1998 MT 57, ¶ 47, 288 Mont. 79, ¶ 47, 956 P.2d 54, ¶ 47; *EBI/Orion Group v. Blythe* (1997), 281 Mont. 50, 57, 931 P.2d 38, 42.

¶17     With the record presented, we normally would not grant relief to a litigant who fails to document its arguments sufficiently in the district court and this Court. Consequently, we understand the District Court's position in this matter. However, we are concerned about the well being and protection of the minors involved in this proceeding.

¶18     Special needs trusts are appropriately designed for certain situations so as to ensure the beneficiary's support and future eligibility for Medicaid and other governmental benefits. When properly used, these trusts are prepared and approved with the consent of the various governmental entities charged with the responsibility of such programs. Specifically, in certain catastrophic personal injury cases, victims may have to compromise their claims when facing the questionable liability of the defendant. Although such compromise settlements are in the best interests of the victims, the result is that the victims are only compensated partially and sometimes minimally compared to the actual damages suffered. In such situations, it is entirely proper to recognize in the settlement documents that the victims' actual damages far exceed the amount of settlement received and the proceeds received represent compensation for nonmedical damages. In these cases, a special needs trust may be properly used to preserve the victims' eligibility for Medicaid and other governmental programs. These personal injury plaintiffs are not "double dipping," but all involved simply recognize that the compensation paid does not fully compensate the injured parties and thus Medicaid can be preserved to meet their future medical needs.

¶19     Although the record was not sufficiently developed on all of these matters, we are

6

concerned that under the circumstances these children may not have been properly protected by the District Court's rejection of a special needs trust.  Therefore, we think the proper course is to reverse and remand this matter to the District Court for further consideration.

¶20    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶21     I join the Court's opinion affirming the District Court on Issues One and Two. King clearly failed to establish error by the District Court with regard to the Simmonses being parties to future matters involving the conservatorship of King's children and with regard to requiring their consent for stipulations for disbursement of settlement monies to the children.

¶22     I respectfully dissent from the Court's opinion on Issue Three, relating to the special needs trusts. I do so for the same reasons as I join the Court's opinion on the earlier issues: King has not established error. In other words, I dissent for the reasons stated so candidly by the Court. I would affirm the District Court on this issue as well.

¶23     I, too, am concerned about the well being and protection of these children. However, as the Court properly notes, King did not present evidence or clearly defined argument in the trial court supporting the need or basis for establishing special needs trusts. I also agree with the Court that she does not do so on appeal and, indeed, does not advance a single authority in her opening brief under which the District Court erred in not establishing such trusts in the present case. I disagree with the Court that only "normally" would we grant relief to an appellant who fails to support her or his argument in either the trial court or at this Court. Our cases are legion that we do not even consider arguments not supported by authority as required by Rule 23(a)(4), M.R.App.P. *See, e.g., Wiard v. Liberty Northwest Ins. Corp.*, 2003 MT 295, ¶ 30, 318 Mont. 132, ¶ 30, ___ P.3d ___ , ¶ 30; *In re Marriage of Gerhart*, 2003 MT 292, ¶ 24, 318 Mont. 94, ¶ 24, ___ P.3d ___, ¶ 24; *In re Marriage of Clark*, 2003 MT 168, ¶ 25, 316 Mont. 327, ¶ 25, 71 P.3d 1228, ¶ 25; *Hawkins v. Harney*, 2003 MT 58, ¶ 34, 314 Mont. 384, ¶ 34, 66 P.3d 305, ¶ 34. To reverse a District Court on

8

a record--and briefing--such as that before us here is, in my view, insupportable.

¶24 The appellant bears the burden of establishing error. *See, e.g., Hawkins,* ¶ 35*; In re Marriage of McMahon,* 2002 MT 198*,* ¶ 7*,* 311 Mont. 175, ¶ 7, 53 P3d 1266, ¶ 7; *Matter of M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18. The Court admits that King has not satisfied her burden here. Our concern for the children notwithstanding, it is our duty to apply the law, not to simply--and without any legal justification--reverse a district court under circumstances such as these.

¶25 The Court sets an unwise and dangerous precedent here. It signals that it will reverse trial courts, without any legal basis whatsoever, when it has "concerns." How it will decide when to exercise such extraordinary discretion in future cases remains to be seen. I cannot agree with turning Montana's legal system on its head in such a fashion.

¶26 I would affirm the District Court on all three issues. I dissent from the Court's refusal to do so.


/S/ KARLA M. GRAY


Justice John Warner joins in the foregoing concurring and dissenting opinion of Chief Justice Karla M. Gray

/S/ JOHN WARNER