No. 04-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 39

IN RE THE CONSERVATORSHIP OF
ALICE P. KLOSS,

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. CDP 2003-144,
                The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Joseph C. Engel, III, Attorney at Law, Great Falls, Montana

        For Respondent:

        Robert F. James, Cathy J. Lewis, Ugrin, Alexander, Zadick & Higgins, Great
        Falls, Montana

                                        Submitted on Briefs: February 2, 2005

                                                Decided: February 22, 2005

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Alice Kloss (Kloss) appeals from an order of the Eighth Judicial District Court, Cascade County, denying her motion to dismiss a petition filed by a third-party seeking appointment of a conservator for her.  We affirm.

¶2     We must decide whether Robert James (James), an attorney for an adverse party in a related case, has standing to petition for a conservatorship of Kloss pursuant to § 72-5-401, MCA.

## BACKGROUND

¶3     Kloss is a 97 year old widow without any children or grandchildren.  Until 1998, when Kloss fell and broke her legs, hip, and pelvis, forcing her move from her apartment to an assisted living facility in Great Falls, she had no living relatives in Montana.  Kloss requested, due to her injuries, that Kenneth Parrent (Parrent), Kloss's 71 year old nephew, move from Colorado to Great Falls, to assist in the care of Kloss's affairs.  Kloss executed an unlimited power of attorney for Parrent to manage her assets, worth approximately $963,500, and Parrent later became sole trustee of Kloss's living trust.

¶4     Kloss filed suit against her brokerage firm, Edward Jones and its local manager, Paul Husted (Husted), alleging they tortiously caused her to execute a charitable remainder trust.  Parrent retained Joseph Engel, III, (Engel) to prosecute the action and to represent both Kloss and Parrent's interests.  Our decision in *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, 310 Mont. 123, 54 P.3d 1, emerged from Kloss's action, where we decided that Kloss had not waived her constitutional right to a jury trial by executing a brokerage service agreement that

contained a mandatory arbitration provision. We held that the brokerage service agreement constituted a contract of adhesion and, therefore, the mandatory arbitration provision could not be enforced. *Kloss v. Edward D. Jones & Co.*, ¶¶ 29, 32.

¶5 James and Cathy Lewis (Lewis) represented Edward Jones and Husted in *Kloss v. Edward D. Jones & Co.* During the discovery process, James and Lewis learned that Kloss's estate had been depleted of more than $800,000 under Parrent's management, with over $400,000 being paid to Parrent and Engel for their services. James also learned that Parrent had previously petitioned the court to be appointed conservator of Kloss's estate and that when Kloss's other family members from Colorado and Washington were notified of Parrent's petition, they wrote letters to the court expressing their objections to Parrent's management of Kloss's financial matters. Based on this information, James, in consultation with the other partners in his firm, sought appointment of a conservator for Kloss. James filed the petition separately and in a different court from the *Kloss v. Edward D. Jones & Co.* litigation, and his petition did not seek to have himself or any member of his firm appointed conservator.

¶6 Kloss objected on the grounds that James, as counsel for an adverse party, could not be considered "interested in [Mrs. Kloss's] welfare" under § 72-5-401, MCA, and, therefore, lacked standing to petition for a conservatorship on her behalf. The District Court denied Kloss's motion after holding a hearing on the petition where it heard testimony from Kloss, James, Parrent, a court-appointed visitor, Kloss's new broker at Dain Rauscher, and an employee at the facility where Kloss lives. The District Court ordered appointment of a

conservator to represent Kloss and to investigate "any potential claims that may be made against individuals who were involved with Mrs. Kloss and her affairs over the last several years." Kloss appeals.

STANDARD OF REVIEW

¶7     We conduct plenary review of a district court's conclusions of law to determine whether the court's conclusions are correct as a matter of law. *Williams v. Schwager*, 2002 MT 107, ¶ 22, 309 Mont. 455, ¶ 22, 47 P.3d 839, ¶ 22 (citations omitted).

DISCUSSION

¶8     Under § 72-5-401, MCA, regarding the appointment of guardians or conservators, "*any* person who is interested in [the protected person's] . . . welfare . . . may petition for the appointment of a conservator." (Emphasis added). Kloss urges us to interpret "person who is interested in" under § 72-5-401, MCA, to be "interested person" under the more general definitions of the Uniform Probate Code. This interpretation, Kloss contends, limits those who may petition for a conservatorship to those who have a property right in or claim against the estate. *See* § 72-1-103(25), MCA, (defining "interested person" as including "heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or a claim against a . . . protected person"); *In re Estate of Miles v. Miles*, 2000 MT 41, ¶ 46, 298 Mont. 312, ¶ 46, 994 P.2d 1139, ¶ 46 (holding that an "interested person," in order to have standing, must have a property right in or claim against the estate); *In re Estates of Esterbrook and Simmons*, 2003 MT 317, ¶ 7, 318 Mont. 275, ¶ 7, 80 P.3d 419, ¶ 7 (interpreting "[a] person who is furnishing or supplying any money for support or care of a

4

person for whom a conservator has been appointed is a person interested in the welfare of the protected person" under § 72-5-413(4), MCA, as an "interested person" under § 72-1-103(25), MCA).

¶9     We decline in this instance, however, to accept Kloss's offer to change the language in § 72-5-401, MCA, from "any person who is interested" to "interested person." Section 72-1-103, MCA, provides that the definition of "interested person" applies unless the context otherwise requires. Further, § 72-1-103(25), MCA, provides that, in addition to having a property right in or a claim against the protected person, the meaning of interested person, "may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding." We determine this matter to be one of those times.

¶10    The District Court found, and we agree, that the legislature broadly defined those who have standing to petition the court on behalf of another under § 72-5-401, MCA. When interpreting a statute, we seek to implement the objectives the legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls. *In re Co-Guardianship of D.A., JR.*, 2004 MT 302, ¶ 14, 323 Mont. 442, ¶ 14, 100 P.3d 650, ¶ 14. We further recognize that conservatorship proceedings exist to promote the best interests of the protected person. *Estate of Bayers*, 2001 MT 49, ¶ 14, 304 Mont. 296, ¶ 14, 21 P.3d 3, ¶ 14. The plain language of § 72-5-401, MCA, reads broadly enough to include those interested in the welfare of the protected person. James, under these facts, sought to protect Kloss from the continued rapid depletion of her estate; the depletion of which she had no knowledge according to her testimony at the hearing.

¶11 The District Court concluded that James's representation of Kloss's adversary in a separate action does not preclude him from acting in Kloss's best interests. The court noted that a conservatorship proceeding, being similar to a guardianship proceeding, is not an adversarial matter. *Bayers*, ¶ 14. No error arises from the District Court's analysis under the facts of this case. The record clearly shows that James developed an interest in Kloss's welfare through the knowledge he gained by working on *Kloss v. Edwards D. Jones & Co*. James discovered facts that led him to believe that Parrent and Engel had depleted Kloss's estate at an alarming rate and to Kloss's detriment.

¶12 Kloss also has failed to demonstrate that James had a conflict of interest in petitioning for appointment of a conservator. James received no compensation for pursuing the conservatorship and nothing in the record suggests that James's clients, Edward Jones and Husted, benefitted. The fact that James represented adverse interests in a related case does not, in and of itself, disqualify him from petitioning for a conservatorship under § 72-5-401, MCA. We agree with the District Court that James filed the petition to protect Kloss and not for any other or improper purpose.

¶13 Kloss further invites us to decide that James lacked standing because he has no personal stake in the outcome of the controversy. This argument closely mirrors her "interested person" argument. Kloss points out that we have held when distributing estates, a party does not have standing unless it possesses a personal stake in the outcome. *See In re Estate of Goick* (1996), 275 Mont. 13, 19, 909 P.2d 1165, 1169 (overruled on other grounds by *Lockhead v. Weinstein*, 2003 MT 360, ¶ 16, 319 Mont. 62, ¶ 16, 81 P.3d 1284,

¶ 16). We do not have in this instance, however, a matter where James must possess a personal stake. James has not requested the District Court to distribute an estate, but rather requested that Kloss and her estate be protected from further alleged exploitation.

¶14 Kloss also argues James's petition constitutes a collateral attack on *Kloss v. Edward D. Jones & Co.* and was designed "to wear down and intimidate the elderly Mrs. Kloss . . . so she would not have the stomach or stamina for trial" in that matter. We do not view James's petition for a conservator to be a collateral attack because as pointed out in ¶12 above, we agree with the District Court that James filed the petition to protect Kloss and not for any other or improper purpose.

¶15 Kloss further contends that James's petition contains "outrageous accusations against both her nephew and attorney." According to the testimony and evidence presented at the hearing to dismiss the petition, however, the value of Kloss's estate had suffered a precipitous decline under Parrent's supervision with substantial sums paid to Parrent and Engel for their services. In fact, it appears that, under their watch, the value of Kloss's estate declined by more than $800,000. Parrent is Kloss's declared dependent, lives in Kloss's house with his fiancé, and he testified at the hearing that he is entirely dependent on Kloss's estate for his living expenses and income. Kloss, by contrast, testified that she was unaware that Parrent allegedly used her money for his own personal legal matters and may have transferred much of her estate into technology stocks, when her previous investments generally involved low-risk investments designed to provide her daily living expenses. As for Engel, he allegedly charged both an hourly fee and a contingency fee for the same work

7

and received more than $200,000 in fees, although Kloss testified that she had paid Engel only several thousand dollars.

¶16   Finally, we note that the record shows that Parrent had argued that Kloss was competent to manage her financial affairs during the *Kloss v. Edward D. Jones & Co.* litigation and even obtained a doctor's opinion to that effect. On the other hand, Parrent petitioned that he be appointed conservator of Kloss's estate. Parrent must have believed that Kloss needed a conservator to protect her estate based upon her inability to manage her financial affairs. Although the court never held a hearing on Parrent's petition, a number of Kloss's relatives expressed grave concerns to the court about Parrent's possible appointment. Now Parrent apparently has expended more of Kloss's money to oppose James's petition to protect Kloss's assets when Parrent earlier believed that she needed such protection, albeit with him serving as conservator.

¶17   Based on these allegations, and the fact that Kloss's estate has been depleted by more than $800,000, we conclude James qualified as "interested" in Kloss's welfare under § 72-5-401, MCA, and had standing, under these circumstances, to petition for a conservatorship for Kloss. The District Court concluded that Kloss needed a conservator to investigate "any potential claims that may be made against individuals who were involved with Mrs. Kloss and her affairs over the last several years." This conservator will investigate whether James's petition was designed to intimidate Kloss or whether his "outrageous accusations" regarding the conduct of Parrent and Engel withstand scrutiny.

¶18   We conclude, therefore, that the District Court correctly concluded that James had

8

standing to petition for the appointment of a conservator for Kloss pursuant to § 72-5-401, MCA.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE