NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 76

No. 2017-422

| In re Guardianship of C.H. | Supreme Court |
|---|---|
| | On Appeal from |
| | Superior Court, Franklin Unit, |
| | Family Division |
| | April Term, 2018 |

Mary L. Morrissey, J.

Michele Boulet, Pro Se, Essex Junction, Petitioner-Appellant.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jared C. Bianchi, Assistant
  Attorney General, Waterbury, for Respondent-Appellee Department of Disabilities,
  Aging & Independent Living.

Barbara Prine, Vermont Legal Aid, Inc., Burlington, and Charles Becker, Vermont Legal Aid, Inc.,
  Rutland, for Respondent-Appellee C.H.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Petitioner Michele Boulet appeals the trial court's decision dismissing her petition for modification of the guardianship of C.H. We hold that the trial court's interpretation of the statute defining who has standing to petition for a modification of guardianship is inconsistent with the plain language and purpose of Vermont's guardianship provisions. Accordingly, we reverse and remand for proceedings consistent with this opinion.

¶ 2. On May 1, 2017, petitioner filed a petition for modification of the guardianship of C.H., a developmentally disabled adult who has had a guardian since 2009. C.H.'s first guardian, a

member of her immediate family, was removed in 2015 after being substantiated for financial exploitation of C.H. The Commissioner of the Department of Disabilities, Aging, and Independent Living (DAIL) was subsequently appointed as C.H.'s guardian. DAIL remains in place as C.H.'s current guardian. Petitioner is a friend of C.H.'s family. In her memorandum in support of her petition to modify C.H.'s guardianship, petitioner stated that she is C.H.'s godmother, has known C.H. since birth and been friends with C.H.'s mother since the two were young children, and that C.H. is petitioner's "honorary niece." She also stated that she provided significant care for C.H. during C.H.'s childhood and had seen C.H. frequently over the years. Petitioner wrote on her petition for modification of C.H.'s guardianship that she "care[d] very much what happens to [C.H.] throughout her life, and want[ed] her to have a quality of life that makes life worth living."

¶ 3. Shortly after petitioner filed her petition for modification of guardianship, C.H. filed a motion through counsel to dismiss on grounds that petitioner did not have standing to petition the court for modification of C.H.'s guardianship. In October 2017, the trial court granted the motion to dismiss, deciding, in accordance with C.H.'s argument, that petitioner lacked standing to petition for modification of the guardianship. The trial court did not hold an evidentiary hearing on either the petition for modification or the motion to dismiss. Petitioner now appeals the trial court's dismissal of her petition. She raises several arguments in favor of reinstating her petition; as one of her arguments resolves this appeal, we address it alone.

¶ 4. We begin by defining the issue on appeal. The trial court's decision exclusively addressed the issue of standing, which is a jurisdictional matter and therefore a prerequisite to a decision on the merits of the petition. Standing is a component of subject matter jurisdiction, and standing to initiate a guardianship proceeding, or to petition for modification or termination of an existing guardianship, is conferred by statute. "Any interested person with knowledge of the facts alleged may request the State's Attorney having jurisdiction to file a petition with the Family Division of the Superior Court alleging that person is developmentally disabled and in need of

2

guardianship." 18 V.S.A. § 9305. Likewise, "[t]he Commissioner [of DAIL], the person with developmental disabilities, or any interested person may petition . . . to modify or terminate the judgment pursuant to which the Commissioner is providing guardianship." Id. § 9316(b). These statutes confer standing for such actions to an "interested person," which in turn is defined as "a responsible adult who has a direct interest in a person with developmental disabilities and includes the person with developmental disabilities, a near relative, guardian, public official, social worker, or clergy." Id. § 9302(4). Taken together, these statutes mean that only "a responsible adult who has a direct interest in a person with developmental disabilities" may initiate a guardianship proceeding for a developmentally disabled person, or petition for modification or termination of such a guardianship.

¶ 5. The issue in this case, then, is narrow. Whether petitioner is well-suited to serve as C.H.'s guardian is not at issue, nor are C.H. or DAIL's positions on the merits of modifying the existing guardianship. The sole issue presented here is whether petitioner meets the statutory definition of an "interested person," such that she has standing to petition the court for a modification of C.H.'s guardianship. The merits of her modification petition have not been addressed by the trial court, and we do not reach them here.

¶ 6. This case is an appeal from the trial court's decision granting a motion to dismiss. Because the motion to dismiss was premised on lack of standing, which, as noted above, is jurisdictional, we apply the standard of Vermont Rule of Civil Procedure 12(b)(1), under which a court may dismiss an action for lack of subject matter jurisdiction. Our review under Rule 12(b)(1) is "de novo, with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Inman v. Pallito, 2013 VT 94, ¶ 9, 195 Vt. 218, 87 A.3d 449 (quotation omitted). But the threshold question here is a matter of statutory interpretation, and the definitions of "direct interest" and "interested person" are matters of first impression in Vermont. This Court interprets statutory language de novo. State v. Love, 2017 VT

3

75, ¶ 9, __ Vt. __, 174 A.3d 761. "When construing a statute, our paramount goal is to effectuate the intent of the Legislature." Id. (quotation omitted). When considering the intent of a statute, "we look first at the plain meaning of the statutory language." State v. Thompson, 174 Vt. 172, 174, 807 A.2d 454, 458 (2002). But "[w]here the plain meaning of the words of the statute is insufficient guidance to ascertain legislative intent, we look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." Id. at 175, 807 A.2d at 458.

¶ 7. In this context, the plain meaning of "direct interest" suggests a primary, as opposed to derivative, concern with a developmentally disabled person's welfare. Webster's New International Dictionary 738 (2d ed. 1959) (defining "direct" as "[i]mmediate; marked by the absence of an intervening agency or influence; making contact or effected without an intermediary"); Webster's New International Dictionary 1294 (defining "interest" as "[t]o involve the . . . welfare of"). An "interested person," then, is a person with personal knowledge regarding the well-being of a developmentally disabled person who is concerned about the welfare of that person. This definition is consistent with caselaw in other states, the purpose of Vermont's guardianship statutes, and other provisions of those statutes. We begin with the caselaw of other states.

¶ 8. We have been unable to find any other states that grant standing in a guardianship proceeding to a person with a "direct interest" in the subject of the putative proceeding. But several states grant standing to a person "interested in the welfare" of the subject of a guardianship proceeding. See, e.g., Mass. Gen. Laws ch. 190B § 5-303(a) ("An incapacitated person or any person interested in the welfare of the person alleged to be incapacitated may petition for . . . appointment of a guardian . . . ."); Mont. Code Ann. § 72-5-325(1) ("On petition of the ward or any person interested in the ward's welfare, the court, after hearing, may remove a guardian if in the best interests of the ward."); Neb. Rev. Stat. Ann. § 30-2619(a) ("The person alleged to be incapacitated or any person interested in his or her welfare may petition for . . . appointment of a

4

guardian . . . ."). Other states grant standing to "an interested person," as Vermont's statute does, but do not define "interested person" in terms of the person's "direct interest" in the subject of a guardianship. See, e.g., Mass. Gen. Laws ch. 190B § 5-306(c) ("The court, at the time of appointment or later, on its own motion or on appropriate petition or motion of the incapacitated person or other interested person, may limit the powers of a guardian . . . ."); N.H. Rev. Stat. Ann. § 464-A:4(I) ("Any relative, public official, or interested person, or any individual in his or her own behalf may file a verified petition for . . . appointment of a guardian . . . ."); N.H. Rev. Stat. Ann. § 464-A:2(XIII) (" 'Interested person' means any adult who has an interest in the welfare of the person to be protected . . . ."); N.M. Stat. Ann. § 45-5-303(A) ("An interested person may petition for appointment of a guardian for an alleged incapacitated person."); N.M. Stat. Ann. § 45-5-101(I) (" '[I]nterested person' means any person who has an interest in the welfare of the person to be protected . . . ."). Despite these differences, we conclude that the plain language definition of "direct interest" is consistent with the caselaw of other states on the question presented in this case.

¶ 9. For example, in In re Barnhart, 859 N.W.2d. 856 (Neb. 2015), the Supreme Court of Nebraska confronted the question of whether certain charities, named as beneficiaries in a person's will, had standing to object to a petition for guardianship filed by that person's relatives. The court concluded that the will beneficiaries did not have the requisite standing, explaining that even though "no legal interest in the ward [was] necessary to contest a guardianship," still, "an objector must show a true interest or attentiveness to the well-being and protection of the ward." Id. at 864. In other words, the will beneficiaries had a financial interest in the subject of the guardianship proceeding, but that financial interest did not equate with the kind of personal and immediate interest necessary for participation in a guardianship proceeding. The court noted that a guardianship may be challenged by:

> a neighbor, an old friend, the child of an old friend, a member of the clergy, a banker, a lawyer, a doctor, or someone else who has been professionally acquainted with the person needing such

> help . . . com[ing] forward out of simple charity [to] bring the matter
> to the attention of the local probate court.

Id. at 863-64 (alterations in original) (quotation omitted); cf. 18 V.S.A. § 9302(4) (" 'Interested person' . . . includes . . . [a] public official, social worker, or clergy."). Standing in each of the Nebraska court's examples is predicated on actual acquaintance with the person, either personal or professional, as well as an interest in the person's welfare.

¶ 10. As the Nebraska court explained, the degree of "personal attentiveness," or "direct interest" in Vermont's statutory terms, is measurable by whether the person seeking standing can provide testimony or other evidence by which the court can determine whether an initial guardianship is necessary, or an existing guardianship should be modified or terminated. The court explained that the petitioner must be able to "present[] evidence that the ward's welfare [is] in danger." Barnhart, 859 N.W.2d at 864. Specifically, the ability to "bring forth testimony of people in personal relationships with the ward and those who [are] concerned for the welfare of the ward," is particularly convincing evidence that a petitioner has the kind of interest that the Nebraska court held would support standing for purposes of a guardianship proceeding. Id. As discussed more fully below, this is consistent with Vermont's provision governing the creation of a guardianship, which provides that the initial petition must include "[t]he reasons and the supporting facts why guardianship is needed." 18 V.S.A. § 9305(3).

¶ 11. Whether a petitioner can demonstrate such a relation is heavily fact dependent. In In re Conservatorship of Kloss, 2005 MT 39, 109 P.3d 205, the Montana Supreme Court considered the situation of Alice Kloss, a ninety-seven-year-old widow who executed an unlimited power of attorney to her nephew in order to manage her assets. Her nephew sued her brokerage firm on Kloss's behalf and, during the litigation, an attorney for the brokerage firm learned that Kloss's estate had been depleted of more than $800,000 under her nephew's management. The attorney

6

filed a petition to appoint a conservator,[1] which Kloss opposed through her counsel, claiming the attorney "could not be considered 'interested in [Mrs. Kloss's] welfare,' . . . and, therefore, lacked standing to petition for a conservatorship on her behalf." Id. ¶ 6 (alteration in original). The Montana Supreme Court held that, in accordance with a legislative purpose to "promote the best interests of the protected person," the attorney was "a person interested in the welfare of the protected person" because he "sought to protect Kloss from the continued rapid depletion of her estate; the depletion of which she had no knowledge according to her testimony at the hearing." Id. ¶ 10. Thus, a person's interest in a ward's well-being is not dependent on having a particular relationship with the proposed ward, but rather on having actual knowledge of the circumstances necessitating a guardianship, coupled with the intention to act in the ward's best interests. See Barnhart, 859 N.W.2d at 864 ("[W]here an objector has no concerns for the ward's welfare but only concerns of its own potential financial expectancy, such concerns do not give the objector standing to challenge a guardianship or conservatorship . . . .")

¶ 12.    Other states have also been guided by the legislative purpose of their guardianship provisions when interpreting related statutes. In Guardianship of B.V.G., 52 N.E.3d 988 (Mass. 2016), the Supreme Judicial Court of Massachusetts held that "an 'interested person' . . . is a 'person interested in the welfare of the incapacitated person,' " interpreting the Massachusetts provisions concerning a petition to limit a guardianship to adopt the same standard as a petition to remove or appoint a guardian. Id. at 995. The court held that, because "[a] guardianship proceeding is designed to effectuate the best interests of the incapacitated person," the phrase "interested person" must

---

[1]    The standing provisions in the Montana statutes governing conservatorship and guardianship proceedings are substantially similar. Compare Mont. Code Ann. § 72-5-401 (stating that "any person who is interested in that person's estate, affairs, or welfare" may petition for the appointment of a conservator), with id. § 72-5-315(1) (stating that "any person interested in the incapacitated person's welfare" may petition for the appointment of a guardian).

provide "a means by which an individual interested in the welfare of an incapacitated person could advocate on behalf of that person's interests . . . ." Id. at 994-95.

¶ 13. This brings us to the animating purpose of Vermont's guardianship statutes. The stated purpose of Vermont's guardianship provisions is "to assure that citizens with developmental disabilities receive such protection and assistance as is necessary to allow them to live safely within the communities of this State." 18 V.S.A. § 9301. A broad reading of "direct interest" and "interested person" best supports this purpose. As a practical matter, a developmentally disabled person without near relatives, who has no relationship with a "public official, social worker, or clergy," should not be out of reach of the guardianship statutes because no one has standing to petition for appointment of a guardian. Id. § 9302(4). But a narrow reading of the standing provisions could lead to precisely that situation—wherein a court could dismiss a petition for guardianship because the petition is not filed by a person with, in the words of the trial court in this case, an "ongoing relationship" with the developmentally disabled person.

¶ 14. We find persuasive the Nebraska court's emphasis on a putative petitioner's ability to provide testimony or other evidence regarding the need for a guardianship, or modification or termination of an existing guardianship. Barnhart, 859 N.W.2d at 864. This reading of standing in the guardianship context is consistent with 18 V.S.A. § 9305, which governs an initial petition for guardianship. Under that statute, "[a]ny interested person with knowledge of the facts alleged" may petition the State's Attorney to file for a guardianship; the State's Attorney "shall" do so "unless it clearly appears that the petition will be insufficient to support an action" for guardianship. The relevant petition "shall set forth . . . [t]he reasons and the supporting facts why guardianship is needed." Id. § 9305(3). Thus, personal knowledge of the developmentally disabled person's welfare is the basis of the petition needed to initiate a guardianship proceeding; accordingly, a petitioner has standing as an "interested person" with a "direct interest" in the subject of the proceeding where the petitioner has a level of involvement with a developmentally disabled person such that the petitioner

8

has immediate, rather than derivative, knowledge of that person's well-being. This is not governed by the frequency, or even necessarily the recency, of the petitioner's contact with a developmentally disabled person, as the trial court relied on. Nor is it governed by the nature of the petitioner's relationship with the subject of a guardianship petition. Rather, it is the immediacy and impetus of the petitioner's interest in the developmentally disabled person, and whether the petitioner can provide testimony or other evidence relevant to the guardianship, that dictates standing.

¶ 15. The Nebraska court's interpretation is likewise consistent with 18 V.S.A. § 9302(4)'s examples of the kinds of people that the statute presumes have a "direct interest." This category "includes the person with developmental disabilities, a near relative, guardian, public official, social worker, or clergy." Id. (emphasis added). The listed categories of persons are presumed to have a "direct interest" because they are presumed to have the kind of immediate care for the well-being of a person such that they could provide a factual basis for an initial guardianship, or modification or termination of a guardianship.[2]

¶ 16. We turn now to the facts of this case. The trial court ruled, without taking any evidence, that the facts alleged in petitioner's memorandum in support of her petition for modification of guardianship did not support a conclusion that she had standing to file such a petition. But rather than the test we adopt in this case, the trial court applied a more restrictive legal

---

[2] This presumption is also a limitation. Petitioner argues that she has standing as a "public official" because she is a notary. We need not reach the question of whether a notary is a public official because we do not read 18 V.S.A. § 9302(4) to grant standing to any person who could fall within the category of public officials. Instead, the statutory presumption of standing indicates that only public officials operating in a capacity that enables professional contact with a developmentally disabled person, such that the official is in a position to provide testimony or other evidence concerning the person's welfare, fall within the category of "public official" for purposes of the guardianship statutes. Barnhart is persuasive on this point; there, the Nebraska court adopted the reasoning of a 2003 lower court decision holding that a health and human services agency had standing to challenge an existing guardianship because the agency's "primary function [was] to care for those whose health and welfare needs protection," and, because of that function, the agency could produce testimony and other evidence regarding the welfare of the subject of the guardianship. 859 N.W.2d at 864.

test, which relied on petitioner's lack of an "ongoing relationship" with the subject of the guardianship proceeding, to reach this conclusion. We conclude that the facts alleged in petitioner's memorandum are inconclusive regarding whether the motion to dismiss should be granted. See Murray v. City of Burlington, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.) ("A motion to dismiss for lack of subject matter jurisdiction . . . will not be granted unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." (quotation omitted)).

¶ 17. In her memorandum in support of her petition, petitioner alleged that she had known C.H. throughout C.H.'s life, she was C.H.'s godmother, and had seen C.H. regularly and frequently during the course of C.H.'s life. She further alleged that she is close to C.H.'s mother and that C.H. is her "honorary niece." These facts could suggest an immediate relationship between petitioner and C.H., such that petitioner could have standing as an interested person. See id. (explaining that decision on motion to dismiss under V.R.C.P. 12(b) requires court to "assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts"). But petitioner also stated in her memorandum that "[m]embers of [C.H.'s] team asked [her] to petition for [C.H.'s] guardianship, and they stated concerns that some decisions being made by the public guardian were not in [C.H.'s] best interests." Leaving aside the quality of DAIL's decisions on C.H.'s behalf, and the merits of the petition, which are not relevant to the issue of standing, petitioner's statement could suggest a lack of direct knowledge and a potential inability to present evidence on some matters in C.H.'s best interests. Thus, the facts alleged here cut both ways and, on this record, we must reverse the trial court's decision on the motion to dismiss so that the trial court may determine whether the facts support petitioner's standing.

¶ 18. Accordingly, we remand to the trial court for an evidentiary hearing concerning whether petitioner satisfies the test outlined herein—namely, whether she has the kind of immediate

10

relationship with C.H. that would enable her to provide testimony or other evidence regarding whether to modify or terminate the public guardianship of C.H.[3]

    Reversed and remanded.

FOR THE COURT:

_____
Associate Justice

---

[3] We note that not every case will require an evidentiary hearing to resolve standing. Whether a petitioner satisfies the requirements of standing in this context will likely often be clear from the petitioner's petition or memorandum in support of that petition. A trial court need only hold an evidentiary hearing where the filings leave open the question of standing, as they did here.