IN RE THE MATTER OF GERALD P. LaFOUNTAIN, AN ATTORNEY AT LAW, RESPONDENT.

No. 86-153.
Decided March 12, 1987.
738 P.2d 472.

ORDER

PER CURIAM.

This is the time fixed for imposition of discipline upon Gerald P. LaFountain.

The Court has received and considered the report to the Commission on Practice of the State of Montana, Transcript of Proceedings in the Matter of Respondent before the Commission, Findings of Fact, Conclusions and Recommendations of the Commission, brief of Special Counsel for the Commission and brief of counsel for respondent.

The Commission on Practice has recommended that discipline be imposed upon Gerald P. LaFountain, an attorney and counselor at law, respondent herein, as follows:

"1. That the respondent be publicly censured and that such censure by administered by the Supreme Court of the State of Montana;

"2. That the respondent be ordered suspended from the practice of law in the State of Montana, for a period of six months;

"3. That the respondent be assessed and required to pay the cost of these proceedings."

The Court agrees with and accepts the Findings of Fact, Conclusions and Recommendations of the Commission on Practice dated October 1, 1986, and filed with the Court October 22, 1986.

These proceedings find their origin on September 14, 1983, with a civil complaint filed by respondent on behalf of Ronald and Barbara LaFontaine against State Farm Mutual, and respondent's attempted service of process upon State Farm Mutual. The incredible series of events that followed, for which sole responsibility rests upon the shoulders of respondent, has placed him in the unfortunate situation in which he finds himself today.

This order may appear to be unduly lengthy; however, for this matter to be understood we find it necessary to set forth a major portion of the factual findings and conclusions of the Commission on Practice:

## "FINDINGS OF FACT

"1. The respondent, Gerald P. LaFountain, is an attorney authorized to practice law in the State of Montana.

"2. On September 14, 1983, in behalf of his clients, Ronald and Barbara LaFontaine, respondent filed a Complaint against State Farm Mutual, alleging bad faith in settling a claim arising from an automobile accident between the plaintiffs and State Farm's insured. Respondent purported to serve the Summons and Complaint against State Farm at its Billings claim office, contrary to the provisions of Section 33-1-602, MCA, which requires that service upon a foreign insurer be made on the Commissioner of Insurance. State Farm did not answer the improperly-serve Complaint, and on October 6, 1983, respondent filed a default with the Clerk of Court for Yellowstone County. Personnel in the Clerk of Court's office recognized that the Return of Service was faulty on its fact, and

presented the matter to the Honorable Robert H. Wilson, who caused the words "improper service" to be written on the default, and the document was then stapled to the reverse flap of the court file, and not filed with the other documents. Subsequently, State Farm learned of the attempted default, and on November 9, 1983, through their counsel, William Mather, filed a Motion to Dismiss the Complaint for lack of personal jurisdiction, or in the alternative, to quash return of service. Hearing was held on such motion on December 2, 1983, and on that date, Judge Wilson issued the following Order:

" 'The Defendant, having moved to dismiss, or in the alternative, to quash return of service, and the Court considering written briefs and oral arguments;

" 'NOW, THEREFOR, IT IS ORDERED that said Motion be, and thereby is Granted, and that said return of service be, and hereby is quashed.'

"3. On December 30, 1983, respondent filed a Notice of Appeal to the Montana Supreme Court, from the December 2, Order. On April 10, 1984, in Cause No. 84-75, the Supreme Court dismissed the appeal and issued its Per Curiam Order as follows:

" 'Defendant and respondent has filed herein a motion to dismiss this appeal, together with a memorandum of law in support thereof. Plaintiffs and appellants have filed objections to said motion with a memorandum of law and documentary exhibits attached. All have been examined and considered by the Court.

" 'IT IS ORDERED:

" '1. The appeal is dismissed without prejudice on the grounds that the order appealed from is not an appealable order and the cause is remanded to the District Court.

" '2. The Clerk is directed to mail a true copy hereof to counsel of record for the respective parties.

" 'DATED this 10th day of April, 1984.'

" '4. On the morning of May 4, 1984, respondent presented himself to Hardin E. Todd and Harry M. Reed, Clerk and Deputy Clerk of Court of Yellowstone County, and represented to Todd and Reed that he had won the appeal before the Montana Supreme Court and was entitled to a default judgment against State Farm for $150,000 in punitive damages, plus $385.00 in costs. The local rule of practice in the Thirteenth Judicial District required that all default judgments be entered by the District Judge, and accordingly, Reed asked

respondent to present his proposed Judgment by Default document to the Honorable W. Holmstrom, who by that time had replaced the retired Judge Wilson. After waiting in Judge Holmstrom's courtroom for approximately one-half hour, respondent returned to the Clerk's office and advised Mr. Reed that the Judge was occupied with law and motion matters. Respondent then requested the clerk to enter the Default Judgment upon the representation that the plaintiff had won the Supreme Court appeal, and was entitled to judgment in the amount of $150,000. Reed signed a Judgment by Default in favor of plaintiffs, and against State Farm in the amount of $150,000, plus $385.00 in costs. Notice of Entry of Judgment of [sic] served by Reed on the same day. Later on the same day, Reed reviewed the Supreme Court Order of April 10, and determined that plaintiffs may not have been entitled to default judgment. Reed then presented the matter of Judge Holmstrom, and upon review of the file, the Judge flagged the file with a note not to enter execution thereon until further order of the Court.

" '5. Respondent gave no notice, written or oral, to State Farm or State Farm's counsel, of his intention to obtain default judgment. State Farm's counsel first learned of the purported default judgment upon receipt of the Notice of Entry of Judgment, mailed by the Clerk. On May 9, 1984, counsel for State Farm moved to set aside and vacate the Judgment by Default and to recover sanctions against respondent.

" '6. Hearing on State Farm's Motion was held before the Honorable Nat Allen, commencing June 1, 1984, and continuing on June 6, 7 and 8. On June 11, 1984, Judge Allen issued his Findings of Fact, Conclusions of Law, and Order, therein determining that the purported Default Judgment was void and should be set aside, and further determining that in obtaining the Default Judgment, respondent was guilty of deceiving the court and State Farm, in violation of Section 37-61-406, MCA. By said order, the Court ordered respondent to pay as sanctions to State Farm, treble the amount of reasonable attorney's fees to be determined at a later hearing. Following the second hearing, Judge Allen, on July 31, 1984, ordered respondent to pay $4,031.50 to State Farm as sanctions.

" '7. Respondent appealed Judge Allen's order and judgment, and on April 9, 1985, Cause No. 84-526, the Montana Supreme Court, issued its opinion, affirming the lower court's judgment which set aside the default and granted sanctions against respondent.

" '8. The respondent, in his testimony before the Commission, gave

an elaborate and extended explanation for not following Section 33-1-602, MCA, in service of process upon State Farm. That explanation involved respondent's argument that Section 33-1-602 is an "antedated statute" which "had been intentionally repealed" by the 1962 enactment of the rules of Civil Procedure (Transcript pp. 19-21; and 39-48). The respondent's testimony indicates that he was aware of the requirements of 33-1-602, having extensively researched the matter, including inquiry into the Legislative history, but deliberately did not serve the Insurance Commissioner, upon the belief that the statute was not the law in Montana.

" '9. Respondent stated that he interpreted Judge Wilson's December 2, 1983, order to mean that not only was the return of service quashed, but the action itself was dismissed. In his words:

" "I took the position that the Motion to Dismiss was an improper hearing because the law in the State of Montana is that once default has been entered against a party, the relief of that party laboring under the default is a motion to set aside under Rule 56 [later corrected to rule 55], and not a motion to dismiss after the period of time for setting aside a default had run.' ' "

"It was upon that misinterpretation that he attempted to appeal the December 2 Order.

"10. Respondent stated that his immediate conclusion, upon receipt of the Supreme Court's Order of April 10, dismissing the appeal, was that he would have to restart the lawsuit, but then he rationalized the order to mean something entirely different. From the fact that the appeal was dismissed 'without prejudice,' and remanded to the district court, respondent somehow interpreted that to mean that the Supreme Court thought he should obtain his default judgment so as to make the Supreme Court Order final (Transcript pp. 13-18).

" '11. During the June 1984 hearing before Judge Allen on State Farm's Motion to Set Aside the Default Judgment and grant sanctions against respondent, State Farm's counsel, on two occasions, offered on the record to dismiss the motion to impose sanctions if respondent would stipulate to the default judgment being set aside. Respondent rejected these offers and chose to appeal Judge Allen's Order and Judgment (Finding No. 19 of July 11, 1984, Order — Exhibit No. 3 to Transcript).

" '12. Even after the final decision on this matter by the Supreme Court of April 9, 1985, respondent stated that he would not pay the sanction money 'until all the possibilities of correcting this are ex-

hausted within the law,' indicating his intention to further litigate the matter in Federal District Court, because of an alleged violation of civil rights and on the ground that Section 33-1-602, MCA, violated the federal constitution (Transcript pp. 38-41).

" '13. Prior to the hearing before the Commission, respondent reached an agreement with State Farm, whereby the sanctions were forgiven, and his clients' underlying bad faith claim was settled (Transcript p. 66).

" 'From the foregoing, the Commission concludes as follows:

## " 'CONCLUSIONS

" '1. Judge Wilson's Order quashing Summons and the Supreme Court Order, dismissing the appeal, are both clear upon their face as to the intended meaning and effect. Respondent's strained and illogical misinterpretations are difficult to justify. This is compounded by respondent's persistent refusal — even to the time of the hearing before the Commission — to accept the obvious meaning of these orders.

" '2. If respondent had not known or understood the import of Section 33-1-601, MCA, that a foreign insurer must be served through the Insurance Commission, it should have been apparent to him when the issue was raised by State Farm's Motion to Quash, and certainly upon Judge Wilson's December 2, 1983, ruling. At that point a reasonable and ethical practitioner would have taken the simple step of merely re-serving the the Summons and Complaint through the office of the Insurance Commissioner. Instead he chose to appeal. Respondent had several other opportunities to exercise reason. It should have occurred to him after his initial appeal was dismissed by the Supreme Court. Further, during the hearing on the Motion to Set Aside Default Judgment and for sanctions, State Farm's counsel, on two occasions, offered to withdraw the request for sanctions if respondent would merely stipulate to set aside the ill-gotten and void Default Judgment. Again, when Judge Allen ruled on July 11, 1984, that his service of process was improper, and the Default Judgment was therefore, 'null and void, and of no force and effect.' respondent should have accepted the ruling (at least as to the process and Default Judgment issues) and gotten on with the merits of the lawsuit. Despite these repeated opportunities to act in a manner that the Commission feels a reasonable, competent and

ethical lawyer should have acted, the respondent chose in each instance to pursue his senseless litigation.

" '3. Respondent's actions cannot be excused on the basis of zealous representation of his clients. Summons was served on State Farm's local office on September 15, 1983. As of the time of respondent's Answer to the Special Prosecutor's Complaint, March 17, 1986, the sanctions were unpaid and proper service on the Insurance commissioner and stubbornly not been made (Pars. 23 and 26(c) of Complaint and Respondent's Answer thereto). Respondent did not confront the merits of his clients' lawsuit until a time after his Answer was filed in these proceedings, i.e., after May 1986, which was a delay of in excess of two and one-half years. Such a delay obviously was detrimental to the interests of respondent's clients.

" '4. There is clear and convincing evidence in this matter that respondent's actions violated Canons of Professional Ethics, Canon I, Disciplinary Rule 1-102(A)(4), as alleged in Count I of the Complaint, which rule provides:

" ''A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'

"(Paralleling Rule 8.4(c) of Rules of Professional Conduct, adopted effective July 1, 1985)

" '5. There is clear and convincing evidence in this matter that respondent's actions violated Canons of Professional Ethics, Canon I, Disciplinary Rule 7-102(A)(2), as alleged in Count II of the Complaint, which rule provides:

" ''In his representation of a client, a lawyer shall not . . . knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by a good faith argument for an extension, modification or reversal of existing law.'

" '(Paralleling Rule 3.1 of Rules of Professional Conduct)

" '6. There is clear and convincing evidence in this matter that respondent's actions violated *Canons of Professional Ethics*, Canon 7, Disciplinary Rule 7-102(A)(5), as alleged in Count III of the Complaint, which rule provides:

" ''In his representation of a client, a lawyer shall not . . . knowingly make a false statement of law or fact.'

" '7. In regard to Count IV, it appears that respondent has voluntarily settled and satisfied the sanctions awarded to State Farm, and accordingly, the allegations of Count IV are deemed moot.

" '8. The Commission considers that the remaining Counts of the Complaint, are dealt with in the Conclusions heretofore set forth.' "

We affirm the findings of fact of the Commission on Practice.

The following discipline is hereby imposed upon you, Gerald P. La-Fountain for your violation of the Canons of Professional Ethics and the Disciplinary rules adopted under those Canons as specifically hereinbefore set forth:

1. You are publicly censured by the Supreme Court of the State of Montana.

2. You are from the date of this order suspended from the practice of law in the State of Montana for a period of six months.

3. You are assessed and required to pay the costs of the proceedings before the Commission on Practice and this Court relating to this matter. Such costs shall be determined by the Commission on Practice, and the Secretary of the Commission shall furnish to this court and to Mr. LaFountain an appropriate statement of Commission costs. The costs thereupon shall become immediately payable by Mr. LaFountain.

We trust that the discipline imposed upon you will be sufficient to guide you in your future as a lawyer.