PR 07-0131

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 455

_____

IN THE MATTER OF ERIC OLSON,                                  O P I N I O N

An Attorney at Law,                                                    A N D

Respondent.                                                            O R D E R

_____

¶1      On February 15, 2007, the Office of Disciplinary Counsel (ODC) filed a formal complaint against Eric Olson (Olson) alleging violations of Rule 3.4 and Rules 8.4(b)-(d) of the Montana Rules of Professional Conduct (MRPC). These rules read in relevant part as follows:

> **Rule 3.4—Fairness to Opposing Party and Counsel**
> A lawyer shall not:
>       (a) unlawfully obstruct another party's access to evidence, unlawfully alter, destroy or conceal a document or other material having potential evidentiary value, or counsel or assist another person to do any such act . . . .
>
>       **Rule 8.4—Misconduct**
> It is professional misconduct for a lawyer to . . .
>       (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>       (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>       (d) engage in conduct that is prejudicial to the administration of justice . . . .

1

¶2 Olson contested the charges. On January 17 and 18, 2008, the Commission on Practice (Commission) held a hearing on ODC's complaint. Testimony and documentary evidence was presented at the hearing. On July 28, 2009, the Commission issued its Findings of Fact, Conclusions of Law, and Recommendation regarding ODC's complaint against Olson. The Commission concluded that ODC had failed to prove by clear and convincing evidence that Olson had violated Rules 3.4 and 8.4(b)-(d) of the MRPC. The Commission recommended that ODC's complaint be dismissed with prejudice.

¶3 The ODC now objects to the Findings of Fact, Conclusions of Law, and Recommendation of the Commission. For the reasons set forth below, we deny ODC's objections and adopt the Commission's recommendation to dismiss the complaint with prejudice.

¶4 Olson was admitted to the practice of law in Montana in 1993. Olson was the Chief Public Defender in Cascade County until February 28, 2006. On or about December 25, 2005, police in Great Falls, Montana, searched the apartment of Shaun and Kelly Mortenson, seizing various items of evidence related to child pornography. The Mortensons were charged with 38 counts of sexual abuse of children.

¶5 Olson undertook the representation of Kelly Mortenson. Neither Olson nor anyone else in his office had ever represented a client in a child pornography case. Olson met with Kelly for 2 to 3 hours after her arrest and began to form a compulsion defense to the charges against her. Olson also retained the services of Dan Kohm (Kohm), a retired detective from the Cascade County Sheriff's Office and an experienced investigator. On or about January 9, 2006, Kohm and Olson were contacted by Kelly's mother regarding

items left in the Mortensons' apartment that the defense should look at. Olson and Kohm confirmed that an eviction notice had been issued, and were further aware that the apartment had been searched and released by the Great Falls Police Department.

¶6    Olson and Kohm went to the Mortensons' apartment. While there, they collected items they believed would be potentially helpful in formulating a defense. Among the items taken were 13 photographs which had been apparently downloaded from the Internet. All the removed items were bagged, tagged, sealed as evidence, inventoried, and stored under lock and key in Kohm's office. The 13 photographs were introduced by ODC at the hearing in this matter and have been included in the record on appeal. They depict young girls in various erotic poses. In many of these pictures, the genital areas of the girls are exposed.

¶7    At the hearing, Olson and Kohm testified that they did not believe any of the photographs were child pornography. Olson further testified that he did not believe any of the items were contraband. However, Olson did harbor concerns that someone else might think so in light of the language in §§ 45-620(1)(f) and -625, MCA (2005). These statutes read in pertinent part as follows:

> **45-5-620. Definitions.** As used in 45-5-625, the following definitions apply:
> (1) "Sexual conduct" means actual or simulated . . .
> (f) lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person . . . .
>
> **45-5-625. Sexual abuse of children.** (1) A person commits the offense of sexual abuse of children if the person . . .
> (d) knowingly processes, develops, prints, publishes, transports, distributes, sells, exhibits, or advertises any visual or print medium, including a medium by use of electronic communication, as defined in

3

45-8-213, in which a child is engaged in sexual conduct, actual or simulated;

(e) knowingly possesses any visual or print medium, including a medium by use of electronic communication, as defined in 45-8-213, in which a child is engaged in sexual conduct, actual or simulated . . . .

¶8 Kohm also expressed concerns to Olson about whether they could be subject to criminal culpability for possessing the photographs. Accordingly, Olson sought the advice and counsel of Tony Gallagher (Gallagher), the Chief Federal Defender in the District of Montana, who had extensive experience in handling child pornography cases. Gallagher advised Olson to seek a protective order in the event someone might consider the items child pornography. At the hearing, Gallagher testified that such orders are commonplace in these matters and are obtained ex parte from the court. Gallagher also testified that Olson did not believe he was in possession of contraband or child pornography. Gallagher further testified that Olson had an obligation to gather items in preparation of a defense, and did not have a duty to turn over the information at that point in time.

¶9 Based on Gallagher's advice, Olson sought and received a protective order from Cascade County District Court Judge Thomas M. McKittrick authorizing him and Kohm to retain possession of the seized items. Judge McKittrick testified at the hearing that he believed Olson was an aggressive defense attorney and needed to investigate the case adequately. Judge McKittrick also stated that the criminal statutes noted above could expose criminal defense lawyers to criminal liability when investigating charges against their clients. Judge McKittrick expressed the view that these statutes could potentially have a chilling effect on the conduct of criminal defense attorneys.

4

¶10   In early 2006, Olson retained forensic psychologist Dr. Michael J. Scolatti to evaluate his client, review the evidence, and advise him on the compulsion theory of his defense.  Dr. Scolatti reviewed the photographs, opined that none of the photographs were child pornography, and agreed with Olson's compulsion theory of defense.

¶11   On January 17, 2006, Cascade County Attorney Brant Light informed Olson via email that the Mortensons' case would likely "go federal" and that the state charges would probably be dismissed.  That same month, Olson was hired as the state training coordinator for the Office of the State Public Defender.  By reason of the email and Olson's new job, he did not go forward with his defense of Kelly Mortenson.  Olson started his new job on March 1, 2006, and left the Cascade County Public Defender's office.

¶12   Olson did not turn over any of the seized evidence to law enforcement officials, or advise them of the existence of this evidence prior to leaving the public defender's office.  After Olson left, Kelly Mortenson's case was assigned to Carl Jensen (Jensen).  Olson attempted to talk to Jensen about the matter, but Jensen did not have time to discuss it and simply asked for a memo.  Olson prepared an email memo on the case.  Sometime after reading the email, Jensen learned of the existence of the seized evidence.  Jensen contacted Kohm and ordered him to take the items out of the tagged and secured envelopes and turn them over to County Attorney Light.  Jensen did not review any of the evidence, which included some of Kelly Mortenson's private writings, along with the photographs.  Kohm objected to Jensen's request but did carry it out.

¶13 When County Attorney Light received the material, he turned it over to the Great Falls Police Department. At the hearing, County Attorney Light testified that he never had any thought of prosecuting Olson for possessing the material.

¶14 Marcia Hurd is the Assistant U.S. Attorney who prosecuted Kelly Mortenson in federal court. AUSA Hurd testified at the hearing that most of the photographs had already been found elsewhere by the police in their search of the apartment. Because the items had been removed from the tagged and sealed envelopes at Jensen's request, Hurd was unable to use any of the recovered items in the federal case. However, she clearly testified that she had sufficient evidence to prosecute and convict. Furthermore, Brian Norcross represented Kelly Mortenson in the federal trial, and independently developed the same compulsion defense formulated by Olson in response to the state charges.

¶15 ODC's complaint alleged that Olson violated MRPC 3.4 when he "unlawfully obstructed another party's access to evidence and/or concealed documents or other materials having potential evidentiary value." The complaint alleged Olson violated MRPC 8.4(b), referencing the criminal offense of "tampering with or fabricating physical evidence" in § 45-7-207, MCA. This statute reads in pertinent part as follows:

> **45-7-207. Tampering with or fabricating physical evidence.** (1) A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or investigation is pending or about to be instituted, the person:
> (a) alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in such proceeding or investigation . . . .

¶16 Based on ODC's references to this statute in conjunction with the purported MRPC 8.4 violation, the Commission inferred that ODC was alleging that Olson violated

6

§ 45-7-207, MCA. The complaint also alleged Olson violated MRPC 8.4(c) by virtue of his "dishonest and deceitful" conduct. The violation of MRPC 8.4(d) allegedly occurred because Olson's conduct in this matter was "prejudicial to the administration of justice."

¶17 At the hearing, the Commission received testimony from Professor Norm Lefstein (Lefstein), former Dean of the Indiana University School of Law, and an expert on professional responsibility and defense representation in criminal cases. Lefstein was familiar with the Montana criminal statutes, the Model Penal Code upon which Montana's criminal statutes are based, the MRPC, and the American Bar Association's (ABA) Criminal Justice Standards. Lefstein opined that the drafters of the Model Penal Code never considered the impact that a tampering with evidence offense could have on criminal defense attorneys, or the possibility this offense could be used against a criminal defense attorney. Lefstein also reviewed portions of the ABA's Criminal Justice Standards pertaining to the possession of items of physical evidence in connection with an ongoing criminal matter. Under ABA Defense Function Standards 4-4.6(a) and 4-4.6(c), Lefstein opined that Olson was not required by law or the court to turn the physical items over to law enforcement or the prosecution during the time he worked on this case. These Criminal Justice Standards provide as follows:

> Defense counsel who receives a physical item under circumstances implicating a client in criminal conduct should disclose the location of or should deliver that item to law enforcement only: (1) if required by law or court order, or (2) provided in [4-4.6(d)].

Defense Function Standard 4-4.6(a), Physical Evidence.

> Defense counsel may receive the item for a reasonable period of time during which defense counsel: (1) intends to return it to the owner; (2)

7

reasonably fears that return of the item to the source will result in destruction of the item; (3) reasonably fears that return of the item to the source will result in physical harm to anyone; (4) intends to test, examine, inspect, or use the item in any way as part of defense counsel's representation of the client; or (5) cannot return it to the source.

Defense Function Standard 4-4.6(c), Physical Evidence.

¶18    In its findings, the Commission specifically found that "the fact that Olson obtained a court protective order to retain the items is totally inconsistent with the intent required under the tampering with physical evidence statute." While the Commission noted there was no "bright line" rule in the MRPC or model rules directly bearing on this case, it found the testimony of Lefstein and consideration of the ABA Criminal Justice Standards helpful. The Commission noted that the duty to investigate criminal cases is a "very broad responsibility and the failure to perform said duty would be a serious failure upon the part of defense counsel." Further, the Commission noted the ABA's recognition of diligent investigation, and the importance of a defense lawyer taking possession of material produced by his client in order to make a judgment about its possible utility in defending his client. In comparing Olson's conduct to the ABA Criminal Justice Standards noted above, the Commission concluded that his conduct was a "text book example" of the type of functioning expected of defense counsel.

¶19    Additionally, the Commission noted that the case before it involved a complicated area in which the lawyer's judgment must be given some leeway and understanding. The Commission also noted testimony to the effect that there was "bad blood" between Jensen and Olson prior to Jensen's handing of the materials over to County Attorney Light.

¶20 In its conclusions of law, the Commission concluded that Olson had a "good faith belief" that the items taken from the Mortenson apartment were possibly supportive of the defense, needed for examination and evaluation, contained privileged attorney-client information, and were not child pornography or contraband. The Commission noted that Olson had an obligation to provide competent representation to his client, and did so in trying to establish a compulsion defense. The Commission also concluded Olson had a good faith belief that he could not reveal the information in this case, except as required by a discovery statute or court order. In this case, no such statute or order applied.

¶21 With regard to the allegations under MRPC 3.4, the Commission concluded that Olson did everything to comply with this rule as he preserved the evidence in a manner that was safe, and sought a protective order for its possession.

¶22 Under MRPC 8.4(b) and (c), the Commission found no misconduct by Olson. The Commission found no unlawful obstruction of a party's access to evidence, and no evidence of Olson's intent to commit the offense of tampering with evidence. In order to establish a violation MRPC 8.4(d), the Commission, citing *People v. Jaramillo*, 35 P.3d 723 (Colo. O.P.D.J. 2001), concluded that ODC must prove some nexus between the conduct charged and an adverse effect upon the administration of justice. The Commission determined that Olson's conduct had no adverse effect on the administration of justice, and did not affect the federal case against the Mortensons.

¶23 The Commission concluded by noting that ODC has the burden of proof in a lawyer disciplinary proceeding, and must make its proof by clear and convincing evidence. *See* Rule 11(7) of the Montana Rules for Lawyer Disciplinary Enforcement;

9

*Matter of Halprin*, 244 Mont. 363, 367, 798 P.2d 80, 82 (1990); *Matter of LaFountain*, 226 Mont. 296, 302, 738 P.2d 472, 475 (1987). The Commission determined that the ODC had simply failed to meet its burden, and had not proven that Olson's conduct was fraudulent, intentional, or the result of improper motives.

¶24   This Court possesses original and exclusive jurisdiction and responsibility in all matters involving the disciplining of lawyers in the state of Montana. *In re Engel*, 2008 MT 42, ¶ 3, 341 Mont. 360, 177 P.3d 502. We review de novo the Commission's findings of fact, conclusions of law, and recommendations, and weigh the evidence upon which the Commission's findings rest. *In re Engel*, ¶ 3 (citing *In re Potts*, 2007 MT 81, ¶ 32, 336 Mont. 517, 158 P.3d 418).

¶25   ODC's challenge to the Commission's recommendation and findings boils down to two main points. First, ODC claims that the Commission erred when it failed to determine whether or not the 13 photographs were child pornography. Instead, the Commission merely determined that Olson had a good faith belief that these items were not child pornography or contraband. ODC has included the photographs in the record on appeal and asks this Court to review them and make a determination as to whether they are actually contraband. ODC claims this is an important issue which was not determined in this case.

¶26   Second, ODC contends that because these items were child pornography, they were either the fruits or instrumentalities of a crime, and that Olson was required to turn them over to the authorities under the MRPC. In this connection, ODC asserts that a violation of Rule 3.4(a) does not require a violation of a criminal statute. With regard to

10

MRPC 8.4, ODC generally contends that Olson had an ethical obligation to turn the contraband over to the authorities, and that his "good faith belief" that the items were not in fact contraband cannot defeat this obligation. ODC argues that the evidence in this case demonstrates that Olson knew he had child pornography because he obtained an ex parte order for its possession. ODC contends that the fact the apartment had been searched and released by the police does not defeat Olson's duty under the MRPC. ODC also disputes the correctness of the Commission's conclusion that Olson believed in good faith that he did not need to turn these items over in the absence of a court order or applicable discovery statute. Again, ODC argues that a criminal statute or court order would not obviate Olson's ethical duties in this case.

¶27   Finally, ODC disputes the contention that Olson's conduct in this case was a "text book example" of what the ABA Criminal Justice Standards require. ODC contends that there is nothing in these standards which permitted Olson to illegally possess the contraband. Further, ODC disputes the tenability of the claim that Olson had to retain the evidence in order to inspect it. ODC argues that it was apparent that the evidence in this case was child pornography, and that Olson could have still used this material even if it was in possession of the police.

¶28   In *Jacobellis v. State of Ohio*, 378 U.S. 184, 84 S. Ct. 1676 (1964), Justice Potter Stewart famously said of illegal pornography that "I know it when I see it . . . ." *Jacobellis*, 378 U.S. at 197, 84 S. Ct. at 1683 (Stewart, J., concurring). ODC has included the disputed photographs on file, and it is difficult for the Court to comprehend how anyone would not "know" that these are examples of child pornography.

¶29 However, the dispositive question in this case is not whether the seized items in this case are child pornography. Rather, it is whether ODC has demonstrated, by clear and convincing evidence, that Olson violated MRPC 3.4(a) and 8.4(b)-(d), as alleged in ODC's complaint. In its complaint, ODC charged that Olson violated MRPC 3.4 by unlawfully obstructing another party's access to evidence and/or concealing documents or other materials having potential evidentiary value. The Commission correctly determined that Olson did not engage in such conduct. The items were stored, bagged, and tagged, and kept under lock and key in Kohm's office. Olson was not, at that point in the proceedings, obligated to turn the items over to the police or prosecutor by virtue of a statute or court order. Moreover, Olson had a duty to conduct an investigation on behalf of his client and prepare a defense. While we have not yet formally adopted the ABA's Criminal Justice Standards in Montana, the Commission properly relied on them for guidance in analyzing this matter. ODC has simply failed to demonstrate by clear and convincing evidence that this conduct amounted to unlawfully obstructing or concealing evidence.

¶30 The violation of MRPC 8.4(b) was premised on allegations that Olson committed the criminal act of tampering with or fabricating physical evidence. There is no evidence in this record of Olson's intent to tamper with or fabricate physical evidence.

¶31 The violation of MRPC 8.4(c) was premised on Olson's dishonest and deceitful conduct. While ODC disputes whether Olson could have had a good faith belief that the photographs were not contraband, it has failed to demonstrate that Olson's conduct in this case was dishonest or deceitful. And although we do review the Commission's findings

12

and recommendations de novo, the fact remains that the Commission is still in the best position to assess and observe the demeanor of the witnesses in this case. *See Matter of Matt*, 252 Mont. 345, 354, 829 P.2d 625, 630 (1992).

¶32 The MRPC 8.4(d) violation requires conduct on Olson's part which is "prejudicial to the administration of justice." In order to establish a violation of this rule, the Commission concluded that ODC must demonstrate some nexus between Olson's conduct and an adverse effect upon the administration of justice. *See Jaramillo*, 35 P.3d at 731. We agree with the Commission that ODC has failed to prove by clear and convincing evidence that Olson's conduct met this standard.

¶33 Finally, the Dissent opines that there is evidence in the record that Olson misled the District Court into believing he had obtained the photographs from the County Attorney's files, and that such conduct implicates MRPC 8.4(c) and (d). *See* Dissent, ¶ 44-45. If the record before us supported a finding that such conduct occurred, we would not hesitate to find a rule violation. However, because there is not clear and convincing evidence in the record that Olson in fact made such misrepresentations to the court, we decline to find that this violation occurred.

## CONCLUSION

¶34 For the foregoing reasons, we adopt the recommendation of the Commission and conclude that ODC has failed to prove by clear and convincing evidence that Olson violated MRPC 3.4 and 8.4 in his conduct in this matter. Accordingly,

¶35 IT IS HEREBY ORDERED that the complaint against Eric Olson in this matter be DISMISSED WITH PREJUDICE.

13

¶36    IT IS FURTHER ORDERED that the Clerk of this Court is directed to mail copies of this Order to Eric Olson, by certified mail, return receipt requested, and by regular mail to Eric Olson's attorney of record, the Chairman and the Secretary of the Commission on Practice, the Office of Disciplinary Counsel, and the Executive Director of the State Bar of Montana.

DATED this 31st day of December, 2009.

/S/ PATRICIA O. COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Chief Justice Mike McGrath, specially concurring.

¶37    While I concur with the majority decision, the dissent raises valid considerations.

¶38    Initially, in my view it is immaterial in this case whether the photographs in question are pornographic. The District Court's protective order insulated Olson from criminal prosecution as well as claims of ethical misconduct. It is difficult to conclude that Olson was either unlawfully obstructing access to evidence or unlawfully concealing material having potential evidentiary value, as required by M. R. P. C. 3.4(a), when he brought the matter to the attention of the District Court and obtained the order. Moreover, the record does not contain sufficient evidence to conclude Olson misled the

14

District Court. Judge McKittrick testified that he specifically requested not to be told about the facts because he was sitting on the pending case against Olson's client. Thus, I concur with the majority.

¶39 The dissent is correct, however, that as a general matter, § 45-7-207, MCA, as well as M. R. P. C. 3.4(a), prohibit a criminal defense counsel from concealing contraband and physical evidence of a client's criminal conduct. This obligation pertains whether or not counsel intends to use the subject evidence at trial. Moreover, neither federal procedures nor ABA criminal justice standards is determinative of the rule in Montana. Unlike the federal system, Montana has a mutual discovery policy; *see* § 46-15-323, MCA; *State, ex rel. Carkulis v. District Court*, 229 Mont. 265, 746 P.2d 604 (1987). If the case against Olson's client had proceeded in state court and if Olson had intended to use the photographs at trial, he would have been required to disclose them.

/S/ MIKE McGRATH

Justice James C. Nelson dissents.

¶40 As noted in the Court's Opinion, our review of disciplinary proceedings is de novo. Opinion, ¶ 24 (citing *In re Engel*, 2008 MT 42, ¶ 3, 341 Mont. 360, 177 P.3d 502). Accordingly, based on the record, and with due respect to the Court and the Commission on Practice (COP), I cannot join the Court's Opinion in this case.

¶41 Olson's defense derails over his Clintonesque claim that he did not believe that the 13 photographs at issue were child pornography. Similarly, the COP's decision runs off

15

the track for the same reason—that "Olson had the good faith belief that the items taken from the Mortenson apartment following the search and release of the scene by the police were . . . not child pornography or contraband." COP, Conclusion of Law No. 3. Since the COP never determined whether the photographs at issue were or were not child pornography, Opinion, ¶ 25, the adjudicative panel was hardly in a position to conclude anything about Olson's good faith belief in possessing it or determining the *bona fides* of his defense.

¶42 Suffice it to say that the photographs at issue are of pre-adolescent girls: one is dressed in a French maid's costume, others are completely naked, and others are partially clothed. All are posed erotically, and the photographs focus on the girls' exposed genitals and breasts. If these photographs are not child pornography under §§ 45-5-620(1)(f) and 45-5-625(1)(e), MCA (2005), then I am at a loss to know what constitutes child pornography. At least the Court and I agree on that. Opinion, ¶ 28. Indeed, I believe that any "good faith" conclusion to the contrary would be absurd. *See Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683 (1964) (Stewart, J., concurring).

¶43 The COP, however, failed to make this elemental determination, and, as a result, rendered its decision on a faulty underlying premise—Olson's good faith belief. The COP's decision errs in its deference to Olson, and the Court's decision fails in its deference to the COP. In my view, Olson, an experienced criminal defense attorney, could not hold a good faith belief that the photographs of which he took possession were not child pornography and, thus, were not contraband and evidence of the criminal acts of

16

his client. Indeed, the photographs were exactly the sort of child pornography which formed the basis of the charges against Olson's client. More to the point, if Olson really believed, in good faith, that the photographs were not child pornography, then he had no need to obtain the protective order from Judge McKittrick in order to retain possession of the photographs.

¶44 Having concluded that the photographs were contraband and evidence, I also agree with Disciplinary Counsel that Olson violated Montana Rules of Professional Conduct (M. R. P. C. ) 3.4(a).[1] This Rule required that Olson make the photographs available to the County Attorney. The offense of tampering with or fabricating physical evidence under § 45-7-207(1)(a), MCA, is committed when one *conceals* evidence in an official proceeding or investigation. There is no exception in this criminal statute for the possession by defense counsel of actual *evidence* of the criminal conduct at issue. Regardless of what the ABA Criminal Justice Standards might suggest as "guidelines," these cannot supersede Montana's statutes. I am, thus, persuaded that once a criminal defense attorney comes into possession of physical evidence of his or her client's criminal conduct, that he or she is neither legally permitted under § 45-7-207, MCA, nor ethically privileged under M. R. P. C. 3.4(a), to conceal that evidence from the authorities and from the prosecutor. I have a hard time understanding how, if defense counsel comes into possession of the bloody knife used to commit a homicide, that he or she can legally

---

[1] M. R. P. C. 3.4(a) provides that a lawyer shall not "unlawfully obstruct another party's access to evidence, unlawfully alter, destroy or conceal a document or other material having potential evidentiary value, or counsel or assist another person to do any such act . . . ."

and ethically conceal that evidence from the police and prosecutor. While it goes without saying that the defendant is entitled to all exculpatory evidence in the hands of the prosecutor, *State v. Thompson*, 2001 MT 119, ¶ 31, 305 Mont. 342, 28 P.3d 1068, I believe that the law, likewise, requires that the prosecutor be entitled to inculpatory physical evidence and contraband in the hands of the defense, *see Clutchette v. Rushen*, 770 F.2d 1469, 1472-73 (9th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1474 (1986) (holding that a lawyer's conduct in possessing evidence of a crime is not protected by the Sixth Amendment right to counsel). Moreover, a lawyer's conduct in holding fruits and instrumentalities of a crime is not protected by the attorney-client privilege. *Wemark v. State,* 602 N.W.2d 810, 816 (Iowa 1999). That the former evidence may "chill" the prosecution and latter evidence may "chill" the defense, *see* Opinion, ¶ 9, should not take precedence over the fact that our criminal justice system is fundamentally charged with searching for and finding the "truth." Or, so we claim. *See e.g. State v. Waters*, 228 Mont. 490, 495, 743 P.2d 617, 620 (1987) ("The purpose of Montana's discovery scheme is to enhance the search for truth."); *State v. Dezeeuw*, 1999 MT 331, ¶ 16, 297 Mont. 379, 992 P.2d 1276 (holding that the trial court's exclusion of defendant's eyewitness to the altercation, when his only defense was self-defense, hindered the search for truth and, therefore, was an abuse of the court's discretion).

¶45 The same is true here. The photographs were clearly evidence of the charges filed by the Cascade County Attorney against Olson's client, and Olson had the legal and ethical obligation to make the photographs available to the prosecution. I agree with Disciplinary Counsel that Olson violated M. R. P. C. 3.4(a). We are not cited to any

18

authority that permits a lawyer defending or prosecuting a criminal case to break the law in doing so.

¶46 Similarly, Olson was charged with violating M. R. P. C. 8.4(b).[2] Even though Olson was never charged with violating § 45-7-207(1)(a), MCA, that is not a bar to concluding that he, nonetheless, violated this Rule. *See generally ABA Annotated Model Rules of Professional Conduct* 579 (6th ed. 2007). As already noted, having concealed evidence of his client's criminal conduct, I conclude that Olson violated this Rule as well.

¶47 Finally, as to the ex parte, sealed protective order which Olson obtained from Judge McKittrick, there is evidence in the record that Olson misled the court into believing that the photographs were obtained from the County Attorney under that office's open-file policy. In regards to his conversation with Olson about the need for a protective order, Judge McKittrick testified:

> I said, "Have you gone through discovery, did you get an open file from the County Attorney's Office?" . . . And he said, "Yes, open file, yes," and I said something to the effect, "Do you have what may be considered child pornography?" and he said, "Well, look at the Code," and he said, "Yeah, that's a problem." He said, "I'm very, very concerned about that. . . ."

¶48 M. R. P. C. 8.4(c) makes it professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." Likewise, M. R. P. C. 8.4(d) proscribes a lawyer from "engag[ing] in conduct that is prejudical to the administration of justice . . . ." I conclude that these Rules were violated by Olson's

---

[2] M. R. P. C. 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects . . . ."

lack of candor with Judge McKittrick concerning where and how he obtained the photographs. I also conclude that Judge McKittrick's testimony clearly and convincingly demonstrates that he was under the false impression that Olson obtained the photographs from the County Attorney's Office. Obviously, Olson did not obtain the photographs by way of the County Attorney's open-file policy; and Olson was ethically obligated to be candid and truthful with the trial court when he applied for the order of protection. Attorneys should not put trial judges in the position of issuing orders based on the court's misapprehension of the facts.

¶49    In summary, on the facts of this case and on the record before us, I conclude that Disciplinary Counsel got it right. I would reverse and remand to the COP for further proceedings and a recommendation of discipline.

¶50    Therefore, respectfully, I dissent from our decision.

/S/ JAMES C. NELSON